No. 4255

Second Circuit

EVANS v. LOUISIANA GAS & FUEL CO.

(March 16, 1932. Opinion and Decree.)
(April 5, 1932. Rehearing Refused.)

Argued before DREW, McGREGOR and PALMER, JJ.

Jones & Jones, of Marshall, Texas, and Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendant, appellant.

PALMER, J. This action is brought under the Employers' Liability Act (Act No. 20 of 1914, as amended) for the recovery of compensation in the sum of $8,000, payable in 400 weekly installments of $20 each, less credits aggregating $409.50.

The plaintiff was working for the defendant company as telephone lineman, at a salary of $130 per month, at the time he was injured. His duties were to inspect, repair and maintain the telephone lines operated by the defendant. One of these lines extended from Shreveport, in Caddo parish, to Cotton Valley, in Webster par-

ish. On the day of his injury, plaintiff, in pursuit of his regular duties, went from Shreveport to Cotton Valley and performed some of his regular work. He traveled via an automobile or truck owned and furnished him by the defendant company.

After completing his work at Cotton Valley, plaintiff started back to Shreveport, and, after having traveled on the return trip a distance of about fourteen miles, during which time he was caught in a snow storm, the car in which he was riding overturned, severely injuring him, producing a fracture of his skull, and causing concussion of the brain. The fracture was described by plaintiff's attending physician as located on "the left side of the occipital region; ranged through the back portion of the skull." As a result of the injury, plaintiff immediately became unconscious and continued in that condition, or a semiconscious condition, for some time.

The defendant company · paid plaintiff from the date of his injury, weekly compensation in the sum of $1950, until March 26, 1931, at which time these payments were discontinued. The defendant also paid as medical fees for services rendered plaintiff, a sum in excess of the maximum amount provided by law for medical attention to injured employees

In the original answer, defendant, after alleging that they had been paying plaintiff weekly compensation, but on medical advice they desired to carry him to a specialist for examination and that he refused to go, then avers that:

"Your defendant shows that if plaintiff is suffering any disability, it is the direct result of his own arbitrary, unreasonable refusal to accept medical attention and treatment as above stated."

On the same date the original answer was filed (June 20, 1930), defendant also filed a motion to stay proceedings during the refusal of plaintiff to accept medical examination and treatment  This motion was never passed on by the lower court.

The case stood in this situation until April 13, 1931, at which time defendant filed a supplemental answer, alleging in substance, that it had just learned, since paying the last weekly installment of compensation, that plaintiff "was drunk and intoxicated and under the influence of liquor at the time he received his alleged injury, and that his intoxication was the real cause of the accident on account of which he was injured."

Defendant then alleged that the said payments of compensation and medical expenses were made through error. It asked that plaintiff's .demands be rejected; that it be awarded judgment, in reconvention, against plaintiff for the amount it had paid him as compensation and as fees for medical expenses.

On these issues the case went to trial, resulting in a judgment for plaintiff for compensation in the sum of $19.50 per week during the period of his disability, not to exceed 400 weeks, payable weekly, subject to a credit of $1,365, with legal interest on the past due installments from their respective maturities until paid.

From this judgment, defendant has appealed.

### OPINION

In our consideration of this case, the necessity of passing on any other questions, except the charge that the injury was caused by the plaintiff's intoxication at the time of the injury, is obviated, because there is no dispute over the questions of the extent of the injury, and that plaintiff was in line of duty when injured. Coun-

sel for defendant say in the beginning of their original brief that "the one issue in this case is the question of drunkenness."

Section 28 of Act No. 20 of 1914, as amended, provides that no employee shall be entitled to compensation when his injury is caused by his intoxication at the time. Paragraph 2 of this section provides that, "in determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be on the employer." As a general rule of law, special defenses must be specially pleaded and proved by a preponderance of evidence, by him who urges the plea. However, the Legislature evidently was unwilling to leave open to any possible doubt the question of who carries the burden of proof in a case, such as we are now dealing with, so paragraph 2 was written into section 28, specifically fixing that burden upon the employer.

As we have said, there is but one question for decision in this case: Were the injuries plaintiff received caused by his intoxication at the time of the injury? We shall therefore only consider that part of the testimony which bears upon this question.

J. T. Powell, a witness called by defendant, testified that when he first saw plaintiff on the day of the injury, he was at the defendant's gasoline plant in Cotton Valley "doing some connection work," and that when he had finished, he came over where he and others were, stopped a few minutes and left for Shreveport; said when plaintiff reached the place where he (the witness) was, he was "popping off. Talking"; said he was pretty full at that time; that he had had about all (liquor) that he could carry; that he was not walking straight, but was wobbling; that he had too much (liquor) in him to be driving a car; that plaintiff was a drinking man; that he went to the scene of the accident soon after it occurred and found plaintiff had been carried into a negro's house nearby and was vomiting, and that the odor of liquor was present; that he found one bottle on the ground which had a little liquor in it and found two or three empty bottles in the back of the car which had the odor of whiskey in them.

L. F. Parkerson was placed upon the stand by defendant. He testified that plaintiff, on his way to Cotton Valley the day of the accident, picked him up at Ivan, and that he rode with plaintiff on to Cotton Valley, a distance of about seven miles; that the only whiskey he saw plaintiff imbibe was one drink taken on the way to Cotton Valley; that plaintiff, after taking the one drink, said "I don't want to take too much," and that "he couldn't afford to get too much on the job that he had"; that after taking the drink, plaintiff said he was not going to take the bottle on into Cotton Valley, so he took it out of the car and laid it down by a dump on the wayside; said plaintiff drove faster than he likes to ride; that after taking the drink, he drove some faster than before; said the only difference in the way plaintiff drove the car before and after taking the drink was that he drove a little faster afterward; said that plaintiff handled the car all right and drove it carefully; that he slowed down as they approached Cotton Valley; said plaintiff talked all right and appeared to know what he was doing; that he would not say plaintiff was drunk; said he saw nothing wrong with his talk; said plaintiff did not act like he was unbalanced when he placed the bottle of whiskey on the roadside.

The testimony of Drs. Hall and Bell, in-

troduced by defendant, is to the effect that they saw plaintiff at the negro's house near where the accident occurred, about one hour afterwards; that he was vomiting and that the odor of liquor was very pronounced; that plaintiff was in a semi-delirious condition when they saw him; that they saw no external signs of any injury, and, smelling the odor of liquor on his vomitus to a very pronounced degree, they considered him drunk; that they saw a bottle picked up from among the tools of the overturned car which had a little whiskey in it. Said they did not know whether his condition had anything to do with the accident or not.

G. C. Sheppard, a witness for defendant, said he went to the scene of the accident at the time Drs. Hall and Bell were there; that he smelled whiskey as soon as he drove up where the car turned over; that he went up to the house where plaintiff was and that when he (plaintiff) vomited, you could smell whiskey "all over"; that there was some whiskey in bottles laying around there; that he would not say just from the signs of whiskey he saw that plaintiff's ability to drive a car was affected, explaining: "Sometimes a man can drink right smart whiskey and still drive a car"; said the left front wheel of plaintiff's car was broken and the casing had a blowout; said there were signs where the car kicked up dirt and snow, spreading out, making a curve around to pass another car.

Amos Jennings, the colored occupant of the cabin where plaintiff was first carried after the accident, testified on behalf of defendant. He said he was at home and saw the accident; said he did not know what caused the accident, but that it happened as plaintiff attempted to pass a car in front of him; that he went immediately to the scene and found plaintiff lying upon the highway; that a little later others came and they carried plaintiff into the house; said he saw no whiskey bottles and smelled no whiskey until after plaintiff was carried into the house and vomited, at which time he smelled something, but says he did not know whether or not it was whiskey; said he could not tell whether he was drunk or not; that the only signs of life present were his breathing, until after the doctor came and gave him the hypodermic, after which he roused up; said plaintiff did not vomit until after the hypodermic was administered.

Plaintiff, testifying on behalf of himself, said that on the date he was injured, he went to Cotton Valley to carry some material, pipe and fittings, with orders from the superintendent of the defendant company to repair some telephones while he was there; that upon arriving at Cotton Valley, he unloaded the material he had carried at the warehouse of the company's refinery; that he fixed two telephones; that he then started back to his home in Shreveport, traveling in a snowstorm; that after traveling fourteen to sixteen miles, he met a man and after passing him, he pulled over to get back to a proper place in the road when something went wrong and he took a left turn to the side of the road, going into a ditch; that the wheel or casing "went bad" on him; that after passing the man he met, his car dropped down and began jumping like the wheel was broken; then he was knocked unconscious and that he did not know anything afterwards until he woke up in the sanitarium, eight or nine days later; said on his way to Cotton Valley he picked up L. F. Parkerson, at Ivan; said Parkerson had some liquor and that he took one drink with Parkerson and that was the only drink he took on that trip;

that after taking the drink, he made Parkerson take the liquor out of the car; that he had no whiskey in his car; that when he saw J. T. Powell (witness who testified for plaintiff) he (Powell) and five or six others were in the refinery yard; that after seeing these men, he repaired a telephone by putting a condenser in it.

He then described the details of the work he did in that undertaking; that he then repaired another phone at the warehouse; that he had taken but one drink and was not drunk or staggering, and that he did his work properly, which an intoxicated person could not do.

Just how much liquor plaintiff imbibed on the day of his injury, no one would or could say, except plaintiff himself, who claims he took only one drink. If he had had but one drink, it was evidently a huge one, since the odor of liquor was very pronounced when plaintiff would vomit after the accident. However, the smell of liquor on the vomitus, regardless of how pronounced it was, would not necessarily prove that defendant was wholly intoxicated at the time of the accident.

In analyzing this evidence, we find the testimony of Drs. Bell and Hall of very little value. They both made emergency calls to see plaintiff, while he was still at the negro's cabin. About the time they arrived (they traveled separately but reached the scene near the same time), plaintiff vomited and the smell of whiskey was very pronounced on his vomitus. They knew an ambulance was expected from Shreveport momentarily to transfer plaintiff to a hospital, so as there were no external signs of injury, and smelling the odor of whiskey, they assumed that plaintiff's trouble was intoxication and not personal injury. Regardless of his condition as to intoxication, the doctors were proved to be

clearly in error as to the injuries plaintiff had received and the cause of his delirium, for the x-ray showed he had a serious skull fracture and that he had, at that time, concussion of the brain. Any conclusions they expressed as to plaintiff's inability to drive a car safely at the time of his injury, due to his intoxication, were based entirely upon their smell of liquor in the room where he lay; hence, such opinions are of little value to defendant in discharging the "burden of proof" resting upon it.

The testimony of G. C. Sheppard is in the same class with that of Drs. Bell and Hall. He did not see plaintiff until after the accident. His views as to plaintiff's intoxicated condition were based entirely upon the fact that he saw some bottles at the scene of the accident which contained the odor of whiskey, and also he smelled the odor of liquor in the room where plaintiff was carried.

The only eyewitness, except plaintiff, was Amos Jennings (colored). He saw nothing to show that plaintiff was intoxicated, except he says he smelled something after plaintiff vomited. He gave no testimony to the effect that plaintiff was improperly handling the car when the accident happened. If plaintiff was driving as a drunken man does, this witness, who was looking at him at the time, certainly would have seen some evidence of it, and yet he gave no testimony that such was the case.

The witnesses, Parkerson and Powell, are the only two testifying who had any chance to know anything of plaintiff's condition as to intoxication before the injury. Both were placed upon the stand by defendant. At the time of the trial, Powell was still working for defendant, while Parkerson had no connection with it. Parkerson rode with plaintiff from Ivan to

Cotton Valley, and he says he drove all right, except a little fast; that he talked all right and appeared to know what he was doing; that he did not wobble while walking, and that he would not say he was drunk. On the other hand, Powell, who saw plaintiff right after Parkerson left him, says he wobbled when he walked and was too drunk to drive a car.

Thus, we find defendant's two most important witnesses widely differing on very material matters. Defendant vouched for both of them. If they are honestly differing, then which one is in a better position to be correct in what he says? Powell only saw plaintiff a few moments at a time he, Powell, was engaged in his regular work. Parkerson was with him for some time; rode in a car driven by plaintiff, and hence, saw him in action at the steering wheel. He talked to plaintiff for some time and if he was too intoxicated to drive a car safely he certainly would have observed it, and yet he says his driving was all right, except a little too fast for him.

It is therefore apparent that what defendant proved by Powell was largely destroyed by what it proved by Parkerson, so very little, if any, progress was made by defendant in the testimony of these two witnesses in discharging the "burden of proof" resting upon it.

It will be noted that plaintiff did certain work on repairing telephones at Cotton Valley that an intoxicated man could hardly perform. This work was done at or near the time when the witness, Powell, said plaintiff wobbled when he walked and was too drunk to drive a car. There is no dispute over the fact that plaintiff did make such repairs at the time stated. Such facts dispute the testimony of Powell, while they corroborate that of Parkerson.

Plaintiff testified, in effect, that he was not intoxicated at the time of the accident, but that his left car wheel broke and the casing blew out as he attempted to pass a car on the highway, and that his accident resulted therefrom.

In the case of Watkins v. Roach, 4 La. App. 261, in dealing with facts somewhat similar to those in this case, this court said:

"Our conclusion, therefore, is that plaintiff, on the occasion of the injury, was intoxicated to some extent. However, it may be that his groggy, drowsy condition immediately following the accident was due to some extent to the shock resulting from the injury.

"But whether plaintiff was in an intoxicated condition at the time of the injury, we think, makes no difference, for the reason that there is no testimony that plaintiff's intoxication caused the injury."

Discussing the burden of proof in that case, the court said:

"The compensation act as quoted above, specifically provides that the burden of proof shall be upon the employer to show that the injury was caused by the intoxication.

"The defendant has failed to discharge this burden. If the court should hold that plaintiff is not entitled to compensation, it would have to assume that plaintiff's intoxication caused the injury. We cannot assume that, under the plain letter of the statute to the effect that the burden of proof on that particular point is upon the defendant."

We would not hold that plaintiff was not intoxicated to some extent at the time of the injury, although the proof is not sufficiently strong to justify us in making a definite ruling to that effect. But whether plaintiff was intoxicated or not is immaterial, for the reason that there is absolutely no proof that any intoxicated condition he might have been in caused the injury.

It is certain the left wheel broke and

the casing on it blew out right at the place where plaintiff was injured. The most reasonable thing to expect under such conditions is for the car to turn over, just as was done in this case, when traveling at a rather fast rate of speed.

We see no error in the judgment of the lower court, so it is therefore affirmed; defendant to pay all costs of appeal.