## SHARBINO v. COLFAX LUMBER & CREOSOTING CO., Inc., et al.

### No. 5629.

Court of Appeal of Louisiana. Second Circuit.

Jan. 28, 1938.

Rehearing Denied March 8, 1938.

Writ of Certiorari and Review Denied May 2, 1938.

Pujo, Hardin & Porter, of Lake Charles, for appellants.

C. D. Moss, of Winnfield, for appellee.

HAMITER, Judge.

While driving a large truck, which belonged to his employer, plaintiff met with an accident on the night of Sunday, August 9, 1936, resulting in serious injury to himself. The employer, who was one Neeley Roberts, was engaged at the time in the carrying out of a contract that he had with the Colfax Lumber & Creosoting Company, Incorporated, to cut and haul timber.

In this suit, instituted pursuant to the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, as amended, plaintiff asks for a solidary judgment awarding him compensation as for total and permanent disability, and for medical expenses, against said Neeley Roberts, the Colfax Lumber & Creosoting Company, Incorporated, and the latter's compensation insurer, Consolidated Underwriters.

After a trial of the merits of the case, there was judgment in plaintiff's favor granting the requested benefits. All defendants appealed.

In this court, no issue is made regarding the amount of wages earned by plaintiff at the time of the accident or the extent of the injuries sustained by him.

As disclosed by brief of appellants' counsel, the only defenses urged are (1) that plaintiff was not engaged in his employer's business at the time of the accident, but was merely pursuing his own business or pleasure, and (2) in the alternative, at the time of the accident plaintiff was in such a state of complete intoxication that he was incapable of operating the truck, and that his intoxication caused the accident.

Defendant Roberts had a contract with the Colfax Lumber & Creosoting Company, Incorporated, for the cutting and hauling of timber for it, as above stated, and he employed others for the purpose of assisting him in its performance. Plaintiff was in

his employ and was charged with the duty of driving one of the trucks in the hauling of poles, after they were cut and bunched, from various localities to the plant of the company, or, if otherwise directed, to the railroad loading points. Both plaintiff and his employer resided near the town of Montgomery, La. The truck in question was intrusted to and placed in the care and custody of plaintiff, and was kept at night at his home when he was hauling near there. When operating elsewhere, it was parked at the rooming house where he spent the night.

In the early morning of the Thursday immediately preceding the date of the accident, plaintiff was sent to a tract of land near Goldonna, La., on which logging operations were being conducted, for the purpose of hauling poles. His instructions, according to the testimony of defendant Roberts and the latter's son, were to remain there until he had hauled all of the poles which had been cut, and until he received orders to go elsewhere. Plaintiff and two other witnesses testify, however, that he was instructed to go to Montgomery on Saturday, if he had finished hauling by that time, and, if not, to go there Sunday.

Plaintiff worked all of Thursday, Friday, and Saturday, conveying poles from the woods to Goldonna, a distance of about seven miles. His final load reached its destination Saturday after sundown, and it is testified to by plaintiff and his witnesses that this completed the transporting of all poles which had been bunched and were to be hauled. The testimony of Mr. Roberts and one of his other employees, Earl Fredieu, is to the effect that all of the poles were not so hauled; and that the latter carried three loads from the woods about four weeks after the accident in question.

It may be here observed that the trial judge resolved the conflicts in the evidence, described in the two preceding paragraphs, in plaintiff's favor, as is disclosed by his well-considered, written opinion which we find in the record. With reference to the transporting of the poles, he states: "The evidence convinces our mind that the plaintiff had hauled and stacked at the railroad all the poles that were cut and stacked before he left for his home. Some thirty days later a truck driver reported that he hauled poles that had been stacked in the vicinity of Goldonna in the same place that plaintiff was supposed to have hauled. This is explained by witnesses for the plaintiff

that after the plaintiff completed the job, the McNaughtons cut poles and stacked some in the woods, and when the plaintiff left all the poles that were cut and stacked were hauled by him to the railroad station. This was very firmly testified to by the two McNaughtons."

As to the instructions given to plaintiff, his opinion recites: "We also are satisfied that plaintiff had instructions from his employer to return to his home near Montgomery after he had completed the job, that he had been sent to perform."

We cannot say that the trial judge manifestly erred in his findings regarding the two above-mentioned, disputed facts. The witnesses were seen and heard by him, which privilege was not ours, and because of this, we are constrained to and do adopt his findings.

The employee spent Saturday night and Sunday morning at his rooming house at or near Goldonna. About 1 o'clock in the afternoon of the last-mentioned day, he proceeded with his truck to the town of Chestnut, La., a distance of approximately eight miles, for the purpose of canceling a date which he had previously contracted with a young lady. After being in her company for a short period of time, he set out on the journey to his home, as directed by the employer. He arrived in Montgomery late that evening and went to several establishments situated there looking for Mr. Neeley. At one of the places he was informed that his employer was seeking him. While in that town he drank several bottles of beer, and also caused a changing of the oil in his truck.

Shortly after 8 o'clock on that Sunday evening, he drove his truck from Montgomery with the view and purpose of going to his home which was a few miles away. He had traveled about two miles when he met an approaching automobile on a curve. The lights of the car blinded him and this resulted in the wrecking of his truck and the above-mentioned, sustained injuries.

Under the facts which we have found and recited hereinabove, it is our opinion that plaintiff was engaged in his employer's business at the time of the accident, and was not on a mission personal to himself.

It was said by the Louisiana Supreme Court in the comparatively recent case of Kern v. Southport Mill, 174 La. 432, 141 So. 19, 20, that:

"Services 'arise out of' and are 'incidental to' an employment, whenever the employment calls for just such services. And whenever the employer calls upon the employee to render any particular service, he, at least (that is to say, the employer himself), is in no position any longer to deny that the services thus requested arise out of and are incidental to the employment. Otherwise, by what right has the employee been called upon to perform them?

"Accordingly, the question whether or not the services being rendered by the employee, at the time when he is injured, arise out of and are incidental to his employment, cannot be raised when the employee has been given special instructions to perform the particular services in which he was engaged at the time he was injured, but only when the employee has undertaken such service on his own initiative as being actually or presumably within the scope of his duties. * * *

"In this case the accident occurred very certainly 'during the course' of plaintiff's employment, since he was on his way back to the mill pursuant to express instructions."

The employee had received instructions to return with the truck to Montgomery on Sunday; and, in view of the exclusive control and custody granted to him, this included the keeping of it at his home that night. Plaintiff was engaged in the performance of those express instructions when injured, and consequently was at that time acting within the course and scope of his employment.

The alternative defense urged herein is that plaintiff was driving the truck while intoxicated, and that this condition was responsible for the accident. This contention is founded on the provisions of section 28 of the Louisiana Employers' Liability Statute, being Act No. 20 of 1914, as amended, which provides in part:

"That no compensation shall be allowed for an injury caused * * * (2) by the injured employee's intoxication at the time of the injury. * * *

"In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proofs shall be upon the employer."

In order for an employee to be denied compensation by reason of the quoted statutory provisions, the proof must not only reveal that he was intoxicated when injured, but also that his intoxicated condition was responsible for the accident; and the onus probandi regarding this is with the employer. Watkins v. Roach, 4 La. App. 258; Evans v. Louisiana Gas & Fuel Company, 19 La.App. 529, 140 So. 245.

In the instant case plaintiff admits that he drank several bottles of beer while in Montgomery, but he denies that this was responsible for the accident. Even if his beer drinking was excessive and produced intoxication, there is no proof in the record which definitely discloses that the accident and injuries resulted from and were caused by an intoxicated condition of the employee. The burden of proving this defense has not been discharged by appellants.

The judgment appealed from appears to be correct, and it is affirmed, with costs.