## LEE v. MARYMAN.
## No. 2031.

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1939.

R. A. Dowling and Walter Wedig, both of New Orleans, for appellant.

J. H. Kilbourne and E. S. Muse, both of St. Francisville, for appellee.

OTT, Judge.

Dan Lee, a colored man, received injuries from which he died'on April 24, 1937, when the truck which he was driving for the defendant turned over on the way from defendant's saw mill to St. Francisville with a load of lumber. This suit is by the widow of the deceased for compensation for herself and a minor child in the sum of $5.40 per week for 300 weeks.

Defendant set up as a special defense the intoxication of the deceased at the time of the accident and alleged that this intoxication was the cause of the accident. This special defense was sustained by the trial court and the suit dismissed. The plaintiff has appealed.

The only serious question presented on the appeal is whether or not the defendant has successfully borne the burden of proving this special defense in order to relieve him from the payment of compensation under Section 28 of the Compensation Law, Act No. 20 of 1914. If the deceased employee was intoxicated at the time of his injury, and if his intoxication was the cause of the accident and injury, no compensation can be recovered.

Defendant had employed the deceased to drive the truck in hauling lumber. On the day of the fatal accident, the deceased had taken a load of lumber to St. Francisville and returned to defendant's mill a few miles distant shortly after noon. It appears that the deceased took several drinks of wine on his way back to the mill.

On the second trip to town with a load of lumber the deceased left the mill around two or three o'clock in the afternoon. Six or seven more negroes were on the truck with him, one sitting in the seat beside him, one sitting just back of the driver's seat in the open cab and the others back on the lumber. Only two of the men on the truck at the time of the accident testified in the case.

From the testimony of these two witnesses, it appears that the deceased whooped and hollered and it was necessary for him

to be warned by those in the truck of his conduct before reaching the residence of a white man living beside the road. He asked for some whiskey and when this was offered to him he acted like a drunk man; got up from the driver's seat while the truck was still in motion, put one foot out on the running board, still trying to hold on to the steering wheel; he urinated while the truck was in motion, standing on the side of the truck. One of the men on the truck slipped down in the driver's seat and tried to guide the truck as it was going down grade, but the truck got out of control, zigzagged across the road and turned over after crossing a bridge. The deceased fell off the truck and received injuries from which he died shortly thereafter.

One of the witnesses on being asked whether the deceased was drunk or sober answered that he thought that the deceased "had plenty in him" and that he looked like he had been drinking. The doctor to whom the deceased was taken soon after the accident testified that "most probably he was intoxicated." In answer to the direct question whether he thought the deceased was slightly or very much intoxicated, the doctor answered that he was very much intoxicated; that he had a strong odor of alcohol on his breath. A white lady who knew the deceased very well, testified that she passed the truck a short time before the accident and the deceased whooped as she passed the truck and acted like he was drunk; that his actions were different from the normal actions of the deceased.

One of the best ways to determine intoxication is by a person's actions. In view of the testimony of witnesses who say that the deceased acted like a drunk person, coupled with the fact that he had been drinking and the odor of liquor was on his breath, leads us to conclude that the unusual action of the deceased was caused from his intoxication. It is argued that the deceased could not have been very intoxicated as he was driving the truck to the point of the accident, had asked his wife if she needed anything else as he passed her house, and had told the man who slipped into the driver's seat how to handle the brakes. But our understanding of the law is that an employee does not have to be intoxicated to the point of helplessness and insensibility in order for him to be deprived of compensation where

his intoxication was the cause of the injury.

Driving a motor vehicle on the highways under normal conditions is attended with sufficient danger without that danger being increased because the driver is not in the full possession of his faculties and is not his normal self by reason of his indulgence in intoxicating liquors. The driver under the influence of liquor will take more chances and exercise less caution than when he is sober and in full possession of his faculties. See Hall v. A. & B. Pipe & Supply Co., Inc., La.App. 159 So. 417.

We are unable to point out any manifest error in the finding of the trial judge that the deceased was intoxicated and his intoxication was the cause of the accident, and for these reasons the judgment is affirmed.