### JOHNSON v. G. M. JOHNSON LUMBER CO., Inc.

### No. 6176.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 13, 1941.

Writ of Certiorari and Review Denied
Feb. 3, 1941.

Hollingsworth B. Barret, of Shreveport, and Wallace & Stinson, of Benton, for appellant.

Julius T. Long, of Shreveport, for appellee.

DREW, Judge.

This is a suit for compensation. The lower court awarded plaintiff compensation for a period of 8 months and defendant has appealed. Plaintiff has answered the appeal praying that the award be increased to a period not to exceed 400 weeks.

Due to the great conflict of testimony on all material issues and the further fact that both plaintiff and defendant are complaining of the judgment of the lower court, we have restudied this case several times and are convinced that the judgment of the lower court is correct.

While we might elaborate on some of the issues as discussed by the lower court in its opinion, our final conclusion would be the same and we are satisfied we cannot improve on the opinion of this court. It is as follows:

"The plaintiff, Ebbie Lee Johnson, brings this suit under the provisions of the Employer's Liability Act (No. 20 of 1914, as amended), as the result of injuries sustained by him in an accident while operating a truck for the defendant, G. M. Johnson Lumber Company, Incorporated. He seeks compensation at the rate of $9.75 per week during disability not to exceed 400·weeks, less the sum of $60.45 which had been received by him from the defendant prior to this suit.

"The defense is based on three of the defenses provided in Section 28 of Act No. 20 of 1914, as amended, which read as follows:

"'1. Be it further enacted, etc., That no compensation shall be allowed for an injury caused (1) by the insured employee's wilful intention to injure himself or to injure another, or (2) *by the injured employee's intoxication at the time of the injury, or (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him or (4) by the employee's deliberate breach of statutory regulations affecting safety of life. or limb.*

"'2. In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer.'

"The three provisions underscored above are the ones on which the defendant relies in this case.

"The case was tried before the late Judge T. F. Bell on May 26th and 27th, 1938. Subsequently, a motion to reopen was sustained and some additional testimony was taken before the writer of this opinion.

"It is admitted that the plaintiff was employed by the defendant as a truck driver and was earning $2.50 per day or $15.00 per week at the time of the accident, and that if he is entitled to compensation, the same would be at the rate of $9.75 per week.

"The accident occurred on a narrow bridge about two miles south of Mooringsport on the Shreveport-Mooringsport Highway and involved two trucks owned by the defendant. The two trucks, heavily loaded with lumber to be used in the construction of oil well derricks, left the defendant's mill near Plain Dealing in Bossier Parish, about two o'clock and were proceeding toward Trees City in Caddo Parish at the time of the accident. The truck in front was being operated by John Edmonds, who was accompanied by a negro helper, Jesse Rawls. The second truck was being operated by the plaintiff, who was alone in the truck at the time of the accident. The only other witness at the scene of the accident was James C. Starnes, who was driving a Schuster Produce Company truck and who had stopped at the opposite approach of the bridge at the time of the accident.

"There was considerable conflict in the testimony of facts preceding the accident. We did not hear the testimony, but as we understand the law applicable to this case, and as we analyze the testimony as to the actual wreck, it is unnecessary to try to reconcile all of the conflicting testimony or to determine which set of witnesses are falsifying in their testimony.

"Under the provisions of Section 28 of this Act, the burden is on the defendant not only to prove the fact of intoxication, but that the intoxication was the cause of the injury suffered by the employee. Without reaching any conclusion on the absolute conflict in the testimony as to intoxication, we think the defendant has failed to sustain the burden of proving that the injury was caused by the intoxication of the defendant if he was in fact intoxicated.

"As we have heretofore stated, there were four witnesses who testified as to the accident and its cause: the plaintiff,

Ebbie Lee Johnson, J. C. Starnes, an employee of Schuster Produce Company, John Edmonds and his helper, Jesse Rawls. The last two were employees of the defendant at the time of the accident and at the time of the trial. We shall review the testimony of these four witnesses.

"The plaintiff's version of the accident is that he was traveling about 30 to 35 feet behind the truck operated by Edmonds immediately prior to the accident. That this distance varied during this trip from 35 feet to 100 yards. In answer to a question as to the cause of his running into the Edmonds truck, the plaintiff said:

" 'Well, the truck that Edmonds was operating, of course, he was ahead of me, and something caused him to have to stop, and we were traveling at a pretty good speed, in a hurry to get there, and something caused him to have to stop, and he stopped, and I was too close to him to stop. The brakes failed to stop me before I hit him, driving too close to stop my truck.'

"The testimony of Mr. Starnes, the driver of the Schuster Produce Company's truck, was given pursuant to a re-opening of the case. Mr. Starnes was traveling in the direction of Shreveport and met the two Johnson Lumber Company trucks at the scene of the accident. We find no mention in his testimony of any act on the part of this plaintiff that would indicate that intoxication, if the plaintiff was intoxicated, had anything to do with this accident. According to his version, the Edmonds truck was some 100 feet ahead of plaintiff's truck when they were in the bend prior to the accident. This distance was only an estimate. According to his testimony all the trucks were going about 40 to 45 miles per hour prior to reaching the bridge. He said that the Edmonds truck started stopping about 100 feet from the bridge and came to a stop about the middle of the bridge and that almost instantly the crash occurred.

"The only other witnesses who gave testimony concerning the accident were Jesse Rawls and John Edmonds. According to their testimony, the plaintiff's truck was about four to six feet behind them. That they began to slow down about 250 feet before reaching the bridge and had shifted to second gear and started up as the crash occurred. This does not seem plausible. The plaintiff would have struck them long before reaching the bridge if he had been only four or five feet to the rear at the time the first truck began to slow down.

"We find no testimony in this record that intoxication, if it existed, had anything to do with this accident. To find that as a fact would require the court to presume that the accident was caused by intoxication. From the testimony, it seems to us that the accident was caused by the sudden stopping of the Edmonds truck, together with the negligence of plaintiff in traveling too close behind it. We cannot presume that this was caused by intoxication.

"The defense, under this Section, has been before the court in four cases, namely; Watkins v. Roach, 4 La.App. 258; Evans v. Louisiana Gas & Fuel Company, 19 La.App. 529, [140 So. 245]; Hall v. A & B Pipe & Supply Company [La.App:], 159 So. 417, and Lee v. Maryman [La. App.], 191 So. 733. In the first two cases the defense was rejected and the plaintiffs awarded compensation for the reason that the defendant failed to prove that intoxication caused the injury. In the last two cases, the testimony of witnesses to the accidents was positive that the plaintiffs were intoxicated and that such intoxication was the direct cause of the accidents and injuries. We shall review those decisions.

"In the case of Watkins v. Roach, 4 La.App. 258, the plaintiff operated a 'dragline' in the construction of a levee. His hand was severely injured in doing this work and he brought suit for compensation. The defendant resisted the claim on the ground that the plaintiff was intoxicated at the time and this caused his injury. In rejecting this defense, the court said:

" 'However, all of the witnesses who testified in the case were convinced that he had been drinking and that he was under the influence of intoxicating liquor both previous to and subsequent to the accident. * * *

" 'But whether plaintiff was in an intoxicated condition at the time of the injury, we think makes no difference for the reason that there is no testimony that plaintiff's intoxication caused the injury. * * *

" 'If the court should hold that plaintiff is not entitled to compensation, it would have to assume that plaintiff's intoxication caused the injury.'

"In the case of Evans v. Louisiana Gas & Fuel Company, 19 La.App. 529 [140 So. 245, 249], the plaintiff was driving in a car alone at the time of the accident. The

car turned over during a snowstorm, resulting in serious injury to the plaintiff. There was rather strong evidence of intoxication in this case, but in rejecting the defense of intoxication, the court said:

"'We would not hold that plaintiff was not intoxicated to some extent at the time of the injury, although the proof is not sufficiently strong to justify us in making a definite ruling to that effect. But whether plaintiff was intoxicated or not is immaterial, for the reason that there is absolutely no proof that any intoxicated condition he might have been in caused the injury.'

"In the case of Hall v. A. & B. Pipe & Supply Company, Inc., [La.App.] 159 So. 417, the court sustained the special defense of intoxication as being the cause of the injury. In that case the court evidently relied strongly on an affidavit made by a witness who was in the truck with the plaintiff at the time of the accident, who stated therein that plaintiff ran the truck into the post because he thought it was a man who would not get off the road. The court said:

"'We are also satisfied that he was intoxicated when the accident happened and that he drove the truck into the concrete post willfully, perhaps believing it was a man who would not move from the truck's path of travel.'

"There was positive evidence of intoxication in the Hall case according to the decision, and also clear proof that this intoxication was the cause of the accident.

"The recent decision of Lee v. Maryman [La.App.], 191 So. 733 [734], is very similar to the Hall case in that the testimony of persons on the truck definitely proved that the intoxication was the direct and sole cause of the accident and resulting injury. We quote herewith a portion of the court's opinion, in speaking of the actions of the deceased, which caused the accident:

"'* * * got up from the driver's seat while the truck was still in motion, put one foot out on the running board, still trying to hold onto the steering wheel; he urinated while the truck was in motion, standing on the side of the truck.'

"As we understand these four decisions, the first two rejected the special defense of intoxication because of the failure of the defendant to sustain the burden of proving that the intoxication was the direct and sole cause of the accident and resulting injury.

"In the case now before the court, we have the testimony of plaintiff and a disinterested witness, J. C. Starnes, as against the testimony of John Edmonds and Jesse Rawls, his negro helper, who are employees of the defendant, as to how the accident happened. The plaintiff and Starnes testify that Edmonds stopped on the bridge, while this is denied by the other two witnesses. Considering the distances and the speed of the two lumber trucks, the testimony of defendant's witnesses is not plausible as to the cause of the accident.

"But there is no direct testimony of any act on the part of Johnson that could be attributed to intoxication, if he was intoxicated, as causing the accident. We would have to assume, as the court said in the Watkins case, supra, that the intoxication caused this accident.

"The next two defenses may be treated together, viz., the contention that Johnson deliberately failed to use an adequate guard or protection against accident provided for him and that he deliberately violated a statutory regulation affecting safety of life and limb. These two defenses are based on the failure to use the brakes and the failure to observe the rule requiring the driver of a vehicle following another to remain at least 100 feet in the rear thereof.

"The only testimony with reference to the use of brakes was that given by the plaintiff, who said that he used the brakes. There was considerable testimony with reference to the adequacy of the brakes, but that, we think, is immaterial, as the defendant has certainly failed to sustain the burden of proving that this plaintiff deliberately failed to use the brakes.

"The defendant bases the other defense on the ground that the plaintiff failed to observe constant request that he remain at a safe distance behind the driver of the first truck.

"According to the testimony of Edmonds, the plaintiff had been close only once to the time they reached Bossier City. They had waited for the plaintiff after passing Neblett's store just before reaching Benton. According to Edmonds, they waited at this point 15 minutes for Johnson to catch up. In his testimony, however, Edmonds did not claim that he warned Johnson about close driving while stopped at Kickapoo, which stop was precipitated by Edmonds for apparently no reason. He did testify that he warned Johnson just out of Agurs and again near

the KGS underpass shortly prior to the accident. This is, of course, denied by the plaintiff. The rule as to driving over 100 feet to the rear does not apply to cities and therefore the testimony as to the close driving on the bridge and in Agurs would be immaterial to this defense.

 "As we understand the testimony of Edmonds, he says that the plaintiff would get up close and then drop back for some distance. We can see no deliberate breach of statutory regulation in this type of driving where the two vehicles are traveling together, with the same object and destination in view. To say the least, there is nothing in the testimony that would indicate that it was such a deliberate violation of the statute as to justify a denial of compensation to an injured employee. The defendant has failed to sustain this burden of proof as required by the statute.

"The plaintiff's own testimony discloses negligence on his part in not driving at a safe distance, but this is a suit for compensation and mere negligence on the part of the employee does not preclude a recovery by him for his injury resulting therefrom.

"The plaintiff claims compensation for a period of not less than 400 weeks. Following the accident he was taken to the Highland Sanitarium where he was unconscious for a period of almost 48 hours. He remained in the hospital for 21 days. He complains that thereafter he was unable to do any work requiring physical exertion. That his head constantly pained him and that he was very nervous.

"This suit was filed on January 11, 1938. The defendant did not have plaintiff examined until the day before the trial. No testimony was offered to show his recovery prior to that time. From the testimony of the doctors we are unable to determine with any degree of accuracy the exact time that such an injury would incapacitate a person. The testimony of the doctors both for the plaintiff and the defendant satisfy us that he was at least recovered at the time of his last examination on May 25, 1938.

"Under clause (a) of subsection 1 of Section 8 of the Act, Act No. 242 of 1928, p. 357, the plaintiff is entitled to compensation at the rate of 65% of $15.00, or $9.75 per week from September 25, 1937, to May 25, 1938, less the credit of $60.45 previously paid, with legal interest on all past due installments, together with all costs of this suit.

"The fees of the doctors who testified in this case are hereby fixed at $25.00, the same to be taxed as cost. The fees of the attorney for the plaintiff are fixed at one-fifth of the net amount that the plaintiff may collect on this claim."

The judgment is therefore affirmed, with costs.