284 So.2d 140 (1973)
Robert D. RAY, Plaintiff-Appellant,
v.
SUPERIOR IRON WORKS AND SUPPLY COMPANY, INC., et al., Defendants-Appellees.
No. 4280.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
Rehearing Denied November 2, 1973.
Writ Refused December 14, 1973.
*141 Ward-Steinman & Karst, by Carl O. Brown, Alexandria, for plaintiff-appellant.
Stafford, Pitts & Stafford, by John L. Pitts, Alexandria, for defendants-appellees.
Before FRUGÉ, SAVOY, and DOMENGEAUX, JJ.
FRUGÉ, Judge.
This workmen's compensation case arises out of an accident that occurred on Saturday night, November 22, 1969, when plaintiff, Robert D. Ray, while driving a vehicle furnished to him by defendant-employer, Superior Iron Works and Supply Company, Inc., was seriously injured in a one-vehicle accident that occurred on Louisiana State Highway No. 129 in Concordia Parish, Louisiana. Made defendants are the employer and its workmen's compensation *142 insurer, The Fidelity and Casualty Company of New York. Plaintiff filed this suit seeking workmen's compensation benefits for total and permanent disability at the rate of $45.00 per week for 500 weeks, and medical expenses, plus penalties and attorney's fees. In defense of this suit, defendants raised the affirmative defense that plaintiff was intoxicated at the time of the injury, that the intoxication of plaintiff was the proximate cause of the accident, and therefore, under the provisions of LSA-R.S. 23:1081(2), plaintiff's claim is barred. The cited statute provides that the burden of proof is on the defendant to prove this defense. The trial court, for written reasons assigned, held that defendants had sustained the burden of proof of its affirmative defense of intoxication, and entered judgment in favor of defendants, dismissing plaintiff's suit. From this judgment, plaintiff devolutively appealed to this court. A carefully considered review of the record requires that we reverse the judgment of the lower court.
The record reveals that at and prior to the date of the accident, plaintiff had been employed by defendant-employer as a store manager and outside salesman at a salary of $600.00 per month, plus an expense allowance up to $135.00 per month (this latter amount to be expended in part in the purchase of intoxicating beverages to be used in the solicitation and maintenance of business associates). Plaintiff also admitted that he always carried liquor in his car to be utilized in showing his appreciation to customers for their business.
On the date of the accident, which was a Saturday, plaintiff left his employer's store about noon. He went to a deer camp occupied by some men who worked for one of his customers. He testified that he arrived there at approximately 2:30 P.M., and left at approximately 5:30 P.M. Beer and liquor were served at the camp, and plaintiff testified that he could not remember exactly what he had drunk, but that he possibly consumed a beer. After leaving this camp, plaintiff went to his home, and afterwards drove to another camp owned by another friend and business associate, arriving there about 8:00 P.M. Plaintiff and his friend sat in his friend's pickup truck and listened to an L.S.U. football game. During this time, plaintiff testified that he had two highballs, which he made from liquor supplied at the camp. He left shortly after the game was over, which he estimated was approximately 9:30 or 10:00 P.M.
Upon his departure from the camp, plaintiff was first required to traverse a primitive, winding, gravel road in order to reach Louisiana Highway 129. Having reached Louisiana Highway 129, he was proceeding northerly at approximately 50 miles per hour when the accident occurred. Photographs introduced into evidence showed that the highway is a level asphalt highway, and as one approaches the scene of the accident proceeding in a northerly direction, the road curves to the right in what would be termed a moderate curve.
The record shows that prior to and at the time of the accident, the weather was clear and dry. According to plaintiff's version of the accident, as he was coming into the curve, he was blinded by the lights of some oncoming cars on his bug-spattered windshield, causing him to slow down and pull off the highway to the right. In trying to whip his car back onto the highway, he lost control and the car went into the ditch on the left side of the road. After his vehicle left the highway, it knocked over a concrete marker and a telephone installation mounted on a concrete post, and ended up against a large tree. Plaintiff testified that the next thing he knew he was in the hospital, and that he did not really regain his senses until the following Wednesday.
The State Trooper who investigated the accident testified that he arrived at the scene of the accident at approximately 11:35 P.M., having received a call at approximately 11:15 P.M. When he arrived at the scene, he found the automobile severely damaged and pressed against a large *143 tree, with plaintiff still in the car. The trooper stated that plaintiff was incoherent, and though seriously injured he was not unconscious. He testified that he administered extensive first aid to plaintiff, but the plaintiff was unable to carry on an intelligent conversation. The trooper investigated the scene of the accident and the shoulders on both sides of the highway for a considerable distance south of the accident scene. From his investigation, he ascertained that plaintiff was traveling north on the highway, that his vehicle crossed over onto the left-hand side of the road somewhere in the curve, and after leaving the highway, the tracks showed the car had run over a concrete bench marker and telephone installation and wound up against a large tree. In describing the curve, this trooper stated that it was not a very sharp curve, but it was an obvious curve. His investigation revealed the plaintiff had gone into the curve, but, as he put it, plaintiff failed to negotiate the curve, and his vehicle went off over on the left-hand side of the highway. The trooper was unable to find anything to indicate the vehicle had been on the right shoulder of the highway prior to the accident. However, he did testify that the car could have gone off the road surface with only a couple of the wheels and not left visible track marks.
It was established that the trooper had considerable experience in investigation of automobile accidents, including many cases involving intoxicated drivers. He had also had special education in automobile accident investigation. He felt there was reason to believe plaintiff was intoxicated in view of the obvious odor of alcohol on his breath, a broken whiskey bottle in the car, and the way plaintiff was conducting himself. Under these circumstances, and in accordance with standard procedures of the Department, he made arrangements for a blood test to be made to determine alcohol content. The trooper called an officer with the Ferriday Police Department, and had him go to the Concordia Hospital and have a blood sample taken from plaintiff. This was properly done, and the blood sample was subsequently sent to the Louisiana State Police Crime Laboratory in Baton Rouge, Louisiana, where by laboratory procedures it was shown that the blood showed a content of 0.26% alcohol.
LSA-R.S. 32:662 provides for the actual blood alcohol test, and sets up the presumption of intoxication at 0.10%, but provides that "this section has no application to a civil action." Plaintiff, however, protested vigorously against not only the presumption of intoxication raised by LSA-R.S. 32:662 et seq., but against any use of the blood test to establish the plaintiff's injuries were caused by his intoxication at the time of the accident. It is noted that the blood sample in question was taken and allegedly tested in accordance with the requirements, as set out in LSA-R.S. 32:661 et seq. We do not here pass on the question of the validity of the test, i. e., as to whether or not the procedural requisites of the statute were met. This is so, because, even if plaintiff was intoxicated at the time of the accident, this court is unable to find sufficient facts in the record from which it can be determined that the plaintiff's intoxication was the proximate cause of his injuries.
The defendants-appellees' rely on a provision of LSA-R.S. 23:1081 which denies compensation "for an injury caused. . . by the injured employee's intoxication at the time of the injury." The record amply demonstrates that the primary concern of the defendants was the matter of proving the plaintiff intoxicated at the time of the accident. However, as we have heretofore stated, assuming the plaintiff was intoxicated in fact, we fail to find that the evidence adduced by defendant shows that more probably than not, the plaintiff's intoxication was the cause of his injuries.
The trial court felt that the testimony of the experienced State Trooper, the circumstances of the accident, and the expert *144 medical testimony of Dr. Butler, coupled with the alcohol test, constituted ample proof to support the defendants' defense of intoxication. We conclude that the lower court manifestly erred in so holding. Having once found the plaintiff intoxicated, the lower court seems to have automatically deemed the causation issue settled. This can not be so as it would clearly violate the intent of the statute as well as its jurisprudential construction. In regard to this matter, Professor Wex Malone has written the following:
"Even though it is found that the intoxication was severe, compensation will not be denied unless it is further shown to have been the cause of the accident. The mere fact that the employee was intoxicated at the time does not establish a causal relation, even though the evidence indicates that the employee was probably careless. The accident must be attributable to intoxication, as opposed to simple negligence (which is not a defense)." Malone, Louisiana Workmen's Compensation Law and Practice, § 344, p. 457 (1951).
In the case of Johnson v. G. M. Johnson Lumber Co., 200 So. 48, 50 (La.App.2nd Cir. 1940), the jurisprudence pertinent to the issue of intoxication, as a defense in compensation cases, was dealt with at some length. As the cases cited therein are still good law, we reproduce an excerpt therefrom and deem it appropriate in the instant case.
"The defense, under this Section, has been before the court in four cases, namely; Watkins v. Roach, 4 La.App. 258; Evans v. Louisiana Gas & Fuel Company, 19 La.App. 529, 140 So. 245; Hall v. A & B Pipe & Supply Company [La.App.], 159 So. 417, and Lee v. Maryman [La.App.], 191 So. 733. In the first two cases the defense was rejected and the plaintiffs awarded compensation for the reason that the defendant failed to prove that intoxication caused the injury. In the last two cases, the testimony of witnesses to the accidents was positive that the plaintiffs were intoxicated and that such intoxication was the direct cause of the accidents and injuries."
We think it most noteworthy that these latter two cases are the only two, to date, which have denied workmen's compensation on the basis of the plaintiff's intoxication. The facts in those two cases, however, revealed most outrageous conduct on the part of plaintiff.
The trial court seemed to rely on its following finding of fact in arriving at its decision. First, plaintiff admitted having had drinks over a period of quite a few hours, and there was a broken bottle of whiskey in his vehicle. Plaintiff's automobile left the asphalt highway in good weather in a gradual curve, with no evidence indicating that there was any proper cause for him having left the highway. Further, the State Trooper who investigated the accident was of the opinion that plaintiff was definitely intoxicated, and this was corroborated to the lower court's satisfaction by the blood test analysis.
Our reading of the record revealed several significant factors which prompted our reversal of the lower court. Three of plaintiff's witnesses testified that plaintiff did not appear drunk at the time of his departure from the hunting camp. Plaintiff navigated, without apparent incident, a seemingly tortuous path prior to gaining entry upon the highway where the accident subsequently occurred. Plaintiff's accident did not result from simply "straighteningout" a curve, it being amply shown by the evidence that he had nearly completed transit through the curve when he ran off the road. The trooper's testimony in regard to the visible evidence at the wreck situs did not warrant a conclusion that the plaintiff could not have momentarily driven off on the right shoulder upon meeting oncoming cars. It was not more probable that plaintiff simply ran off the road. In regard to these findings, the following two cases are found to be most appropriate.
*145 In Sharbino v. Colfax Lumber & Creosoting Co., Inc., 181 So. 20, 22 (La.App. 2nd Cir. 1938), a similar factual situation was presented. Plaintiff asserted that he met an approaching automobile in a curve and was temporarily blinded by its lights, which resulted in the wrecking of his truck and his injuries. The court stated as follows:
"In the instant case plaintiff admits that he drank several bottles of beer while in Montgomery, but he denies that this was responsible for the accident. Even if his beer drinking was excessive and produced intoxication; there is no proof in the record which definitely discloses that the accident and injuries resulted from and were caused by an intoxicated condition of the employee. The burden of proving this defense has not been discharged by appellants."
In Boudreaux v. First National Life Insurance Co., 225 So.2d 687, 690 (La.App. 3rd Cir. 1969), a suit was brought to recover under several accidental death insurance policies where the intoxication of deceased was at issue and his death resulted from a single-vehicle non-collision accident. It is noted that this case does not deal with workmen's compensation and that the driver of the car was actually killed. However, it is deemed applicable in regard to the facts surrounding the wreck itself and their treatment by the court. Appropriate excerpts are as follows:
"We find the case of Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957), remarkably similar to the instant case. There the unwitnessed accident was reconstructed from tire tracks found at the scene of the accident. The vehicle had been traveling towards New Orleans and ran off the then two lane highway onto the right hand shoulder. It traveled along that shoulder for a distance of 118 feet, with all wheels off the highway, then regained the highway and flipped over into the canal on the opposite side of the highway. The trial court and the Court of Appeal (91 So.2d 94-La.App. 1st Cir. 1956), found that `The tracks establish the probability of negligence, and this is all that the law requires in order to conclude that the plaintiff has made out his case. * * * The tracks plus our common sense tell the whole story. * * *'
"However, on certiorari, the Louisiana Supreme Court reversed, observed inter alia as follows: `* * * there is nothing to show what caused his car to leave the pavement; it may have been forced off the narrow highway by oncoming traffic, or by a skidding motorist along-side, and the fact of his having driven onto the adjoining shoulder does not of itself warrant an inference of negligence since it does not exclude other reasonable hypotheses consisting with proper driving on Swilley's part. It occurs to us that the very fact that all four wheels of the car were off the highway is a circumstance from which it would be fair to infer that a car approaching in Swilley's lane of traffic forced him completely off the pavement as an alternative to a collision. Nor can we agree with our learned brothers, of the Court of Appeal, who thought that the most plausible explanation of the car having traveled 118 feet on the shoulder then swerved diagonally across the road, was that the driver was going too fast or that he did not have his car under proper control. The record contains nothing to indicate the speed of the car, but a distance of 118 feet on the shoulder is not inconsistent with prudent driving * * *. No causal connection between the accident and some phase of negligent operation of the car has been shown, and it is our opinion that when all the facts are considered, this case is not one in which the doctrine of res ipsa loquitur is applicable.' Larkin, 97 So.2d 389, 392, 393.
"There is nothing in the record to indicate what caused decedent's car to leave the highway. His vehicle may have been out of control at the time he applied *146 his brakes. Likewise, he may have been attempting to avoid oncoming traffic, or a pedestrian, or some animal which unexpectedly darted into his path. Again, it could have been some mechanical trouble or a blowout. We agree with the trial court. Defendant has failed to carry the burden of proof to show that decedent was in violation of law at the time of his death."
Based upon the foregoing jurisprudence and legislation, and in light of the liberal nature of the workmen's compensation law, we deem it manifestly unjust to deny the plaintiff relief in this case where it has not been shown that his intoxication more probably than not caused his injury. We further recognize that mere intoxication does not bar the normal employee from the benefits of workmen's compensation relief. Therefore, it certainly should not bar relief where, as here, an employee is forced as a condition of his employment to indulge in intoxicating liquors and attend parties where such liquor is freely distributed, in order to obtain business for his employer.
Plaintiff's total and permanent disability was proven to the satisfaction of the lower court. Under LSA-R.S. 23:1202, the appropriate compensation to which plaintiff is entitled is forty-five dollars per week (as the injury was sustained prior to December 31, 1969) plus legal interest on all past due amounts.
By stipulation, medical bills in the amount of $5,075.15 were introduced into evidence. Additionally, plaintiff testified that he had never had his teeth repaired because he could not afford it. He was told that the dental bill would cost about $1,000.00 considering the amount of damage to his teeth he had sustained. Under LSA-R.S. 23:1203, the employer is bound to furnish necessary medical expenses up to the amount of $12,500.00. Therefore, plaintiff's claimed and proven medical expenses fall within the scope of the defendant-employer's liability and within the coverage afforded by defendant-appellee's insurer.
In addition to the amounts ordinarily recoverable under the Compensation Act, plaintiff has additionally pleaded that he is entitled to penalties in the amount of 12% on the total amount of the claim, plus reasonable attorney's fees regardless of the amount recovered. The statutory basis for these demands is found in LSA-R.S. 22:658 and R.S. 23:1201.2. No compensation benefits of any kind have ever been paid to plaintiff. Also, as shown by one of the stipulations filed prior to the actual trial, incorporating some of the correspondence between plaintiff's counsel and both defendants:
(1) formal demand was made for payment of weekly benefits, plus medical expenses;
(2) the employer was satisfied to forward the matter to its insurer;
(3) the insurer absolutely refused to make any payments whatsoever;
(4) the insurer's grounds for making such refusal was the defense of intoxication (this is also the only defense raised in the pleadings, and further stipulated at the beginning of trial to be the only defense);
(5) the sole basis of this defense, as shown particularly by the letter of April 8, 1970, from the insurer's agent to plaintiff's counsel, was the DWI charge shown on the State police report;
(6) following this letter of refusal, plaintiff's counsel again attempted to induce the insurer to pay weekly benefits, pointing out that a mere state of intoxication at the time of the accident, if true, would not be a valid defense.
We find that the record is devoid of evidence upon which to establish a sufficient *147 justification for the defendants' refusal to pay compensation benefits. The sole ground for refusal was predicated upon the police report which indicated plaintiff's intoxication. However, defendants were aware that causation of the injuries was the primary issue and chose to remain steadfast in their refusal of benefits. Therefore, we find the imposition of statutory penalties and reasonable attorney's fees to be warranted in this case. Reference is here made to our recent interpretation and application of the penalty provisions (of LSA-R.S. 22:658 and 23:1201.2) in Thibodeaux v. Associated Distributing Company, 260 So.2d 46 (La.App. 3rd Cir. 1972). It was there determined that the 12% penalty applies only to those weekly compensation payments which are overdue or in the future become overdue more than 60 days. We find this to be appropriate in the instant case.
The amount of "reasonable" attorney's fees to be allowed addresses itself to the discretion of the court. Factors deemed worthy of consideration include the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney. (Roberie v. Ashy Construction Company, 215 So.2d 857 (La. App. 3rd Cir. 1968). We are impressed by the thoroughness and relevance of the brief submitted by counsel for appellant as well as the apparent amount of time spent on this case, and, therefore, award $4,000.00 as reasonable attorney's fees.
For the above and foregoing reasons, we reverse the judgment of the trial court. Judgment is rendered herein in favor of Robert D. Ray and against Superior Iron Works and Supply Company, Inc. et al., jointly and in solido ordering them to pay, as follows:
(1) Compensation at the rate of Forty-five and No/100 ($45.00) Dollars per week for five hundred (500) weeks, beginning November 26, 1969, with all accrued amounts to be paid in a lump sum, together with interest thereon at the legal rate from due date until paid;
(2) Medical expenses in the amount of Six Thousand Seventy-five and 15/100 ($6,075.15) Dollars, together with interest thereon at the legal rate from date of judicial demand until paid;
(3) Penalties in the amount of twelve (12) per cent on all weekly compensation payments which are overdue or in the future become overdue more than sixty (60) days;
(4) Reasonable attorney's fees in the amount of Four Thousand and No/100 ($4,000.00) Dollars;
(5) All costs.
Reversed and judgment rendered for plaintiff.
SAVOY, J., dissents and assigns written reasons.
SAVOY, Judge (dissenting).
I respectfully dissent.
After considering all the evidence, the trial court held that defendant had established, by a preponderance of the evidence, that plaintiff was intoxicated at the time of the accident. This conclusion was based on the circumstances of the accident, the testimony of the trooper investigating the accident, and the results of the blood alcohol test made on plaintiff's blood. The sample of the plaintiff's blood, which was analyzed by the Louisiana State Police Crime Laboratory, Baton Rouge, Louisiana, showed a blood content of 0.26% alcohol.
The record in this case firmly shows that the blood sample in question was properly taken and identified, and that such identification was continued up to and including the time of the actual laboratory work on the blood sample. It was further shown, according to the testimony of the laboratory technician, that two tests were *148 run on this sample as a matter of standard procedure, and that the figure of 0.26% blood alcohol was an accurate figure. The testimony of the only expert witness to testify relative to the effect of this amount of alcohol in the blood, Dr. Willis P. Butler, Sr., established that such an alcoholic content of the blood would render one highly intoxicated.
It is true that defendant has the burden of proof in its defense of intoxication, but it must be remembered that this is a civil case, and in civil cases the party bearing the burden of proof must only prove its contentions by a preponderance of the evidence, and not beyond a reasonable doubt. Assuming arguendo that an attack might be made upon the validity of the blood test if this were a criminal proceeding, certainly the evidence demonstrates that the defendant has shown, by the preponderance of the evidence required in civil cases, that plaintiff was intoxicated at the time of the accident. There is no affirmative evidence in this record that even tends to establish that the blood alcohol test was not properly taken or was not accurate.
It seems apparent that the defendant in this case followed the guidelines set forth in the case of Brown vs. Collins, 223 So.2d 453 (La.App. Cir. 1969) in which we held that certain records showing alcohol content of the blood were admissible in evidence but these records could not have evidentiary weight because there was no expert medical opinion to interpret the contents of the record, nor could the court take judicial notice of the effect of that amount of alcohol in the blood. The court held that the percentage of alcohol necessary to prove intoxication "is a matter of expert medical opinion which must be proved." (223 So.2d 456).
In the instant case it was shown that plaintiff's blood had an alcohol content of 0.26%, and expert testimony established that this amount of alcohol rendered plaintiff highly intoxicated. Competent evidence in the record supports the trial court's holding that plaintiff was intoxicated, and there certainly is no manifest error in the trial court so holding.
It is true that the defendant must not only establish the plaintiff's intoxication, but also, under the provisions of LSA-R.S. 23:1081(2), the defendant must carry the burden of proof as to the intoxication being a proximate cause of the accident. Here again, the trial judge had the benefit of the testimony of all of the witnesses, the photographs introduced into evidence, and the entire circumstances surrounding the accident. The court did not accept plaintiff's version of the accident, wherein plaintiff contended that he was blinded by the lights of oncoming vehicles, causing him to go off the highway onto the right shoulder, which in turn caused him to lose control of the automobile he was driving. There was nothing to substantiate plaintiff's version of the accident other than his own testimony, and the court concluded that the circumstances of the accident, considered in connection with the photographs and the testimony of the State Trooper, did not substantiate plaintiff's version of the accident. Here again, it was the trial court that had the benefit of the testimony and an opportunity to evaluate the credibility of the witnesses, and there was no manifest error in the trial court finding that the intoxication of the plaintiff was a proximate cause of the accident.
As to plaintiff's contention that intoxication should not bar his relief where he is required as a condition of his employment to indulge in intoxicating liquors and attend parties where such liquor is freely distributed, such contention must necessarily fail. It is against the public policy of this state to encourage or condone any practice of indulging in intoxicating liquors to the point of intoxication, and LSA-R.S. 23:1081(2) is declaratory of that policy. It would be squarely against this public policy to condone actions such as those of the plaintiff herein. Certainly an employer could not be deemed to have waived his rights under the above cited *149 statutory provision by the mere fact that his employee would come into contact with intoxicants while in the course and scope of his employment. To sanction such conduct would be completely contrary to public policy.
In this case, after reviewing all the evidence, and evaluating the credibility of the witnesses, the trial court held that plaintiff was intoxicated at the time of the accident, and that plaintiff's intoxication was the proximate cause of the accident. Our courts have repeatedly held on questions of fact that a trial court's factual findings should not be reversed on appellate review, especially so when by its evaluation of credibility the trial court accepts one version of the accident over another. Senegal v. Granger, 193 So.2d 915 (La.App. 3rd Cir. 1967). See also Stevens vs. Lee, 207 So.2d 902 (La.App. 1st Cir. 1968), and cases cited therein.
I find no manifest error herein, and believe that this case should be affirmed, and I therefore respectfully dissent.