AYRES, Judge.
This is an action in tort arising out of a motor vehicle collision of March 29, 1963, on the old traffic bridge spanning Red River between Shreveport and Bossier City, Louisiana. Only concerned on this appeal are the demands of Paul S. O’Dell, a third-party plaintiff, against Auda G. Bullock and his alleged insurer as third-parties-defendants, disposition having been previously made of all the issues between the original parties.
With reference to his claim, the third-party-plaintiff contends that he was a guest passenger in his own automobile, which, at the time, was driven by Auda G. Bullock at an excessive rate of speed and who sideswiped another vehicle and attempted to outrun a police car. That Bullock had permission initially of O’Dell to drive his car, O’Dell has conceded, but he contends that, after Bullock became lost and entered Barksdale Air Force Base, he was no longer operating the car with his permission.
The defenses urged by the third-parties-defendants are that the third-party-plaintiff was negligent in entrusting the operation of his automobile to Bullock at a time when he knew Bullock was intoxicated and unable to drive, in riding in a car with Bullock when both were under the influence of intoxicating liquors, and in urging the driver to increase his already excessive rate of speed when it was ascertained they were being chased by the police. The further defense was urged that both Bullock and O’Dell were engaged in a joint venture. In the alternative, based upon the same contentions, it was urged that third-party-plaintiff was guilty of contributory negligence.
The trial court reached the conclusion that the third-party-plaintiff was guilty of contributory negligence and accordingly rejected his demands. From a judgment thus rendered and signed, the third-party-plaintiff appealed.
The pertinent facts may be briefly reviewed. O’Dell and Bullock, residents of Arkansas, made plans for an evening’s entertainment in Bossier City, where they had previously obtained “dates” for the occasion. They left Magnolia, Arkansas, about 6:30 p. m. with O’Dell driving his car. En route they stopped at Springhill where they purchased, and on their way to Bossier City drank, a quart of beer each. On arriving in Bossier City, they picked up the two girls and made what is commonly known as “The Strip,” notably the Stork Supper Club, Sho-Bar, Peppermint Lounge, Diamond Head, Salt’s, and the Boom-Boom Room. Both young men drank intoxicants as the evening progressed. The intoxicants included beer, whiskey sours, and an unknown drink which was found on a table. After stopping at the Kickapoo Motel and Restaurant for the last of their “dates” to confer with a sister, who lived there, Bullock assumed the driver’s position in the car, which he occupied until the time of the accident. The remaining “date” was carried to her home south of Barksdale Air Force Base, after which Bullock and O’Dell began their return journey to their homes in Arkansas.
Bullock purportedly became lost and entered Barksdale Air Force Base, where they were stopped by guards. Until that moment, O’Dell contended that Bullock’s driving had been normal and that his entrance into the base was the first action to *660 give him cause to believe that something was perhaps wrong with Bullock’s reasoning and driving ability. In his testimony, however, O’Dell denied that he concluded at this point Bullock was incapable of driving, hut admitted he knew that Bullock should not have turned into the base. After the lapse of only a few minutes, and while continuing en route toward Shreveport, the police officers saw that the car was being driven in an erratic manner and that it had sideswiped an automobile, whereupon they gave chase. Bullock disregarded all traffic rules and regulations, stoplights, and traffic lanes, passed cars at speeds of 70 and 80 m. p. h., and entered upon the river bridge. In an attempt to negotiate a curve on the bridge, he lost control of the car and headed into the vehicle of plaintiff Barnebey who was proceeding in the opposite direction. The O’Dell car was damaged beyond repair.
O’Dell testified that he urged Bullock to slow down. Bullock, however, denied this and testified that O’Dell urged further excessive speed in an attempt to evade the police in their chase. From the testimony of these parties as witnesses, we are convinced, as was the trial court, that these two young men left their homes with the intention of going to Bossier City to “make ‘The Strip,’ ” which they did, and that both drank excessively and were, at the time of and immediately preceding the accident, under the influence of intoxicating liquors.
The conclusion is inescapable that the accident was due to Bullock’s excessive drinking, and that O’Dell knew of his condition from having been constantly with him for a period of several hours. Moreover, they were, as the testimony shows, engaged in a joint venture. In order to equalize the spending, Bullock paid on the gasoline bill to reduce his spending money for drinks to that possessed by O’Dell.
 While this court does not hold, as a matter of law, that one who has had a drink or two just before driving an automo.bile must necessarily be guilty of negligence .if he should have an accident, nor that it takes one or more drinks to render a person incapable of safely driving an automobile —as liquor has more or less effect upon individuals according to various conditions, such as age, sex, physical condition, and its accustomed use — the court can take judicial notice of what is common knowledge and human experience that anyone who has indulged in alcoholic beverages knows that they dull perception and reflexes to the extent that one cannot react normally to impending emergencies and dangers. Obviously, Bullock was not acting normally in his erratic driving, in sideswiping another automobile, and in attempting to outdistance a police car.
The principle is well established that, in order to prove that one is incapable of operating a motor vehicle, it need not be shown that he is drunk but only that he has had a sufficient quantity of intoxicants to adversely affect the normal control of his mental and physical faculties; and, moreover that whenever a guest passenger knows, or should know, the driver is under the influence of intoxicants and voluntarily rides with him in such condition, the right of the guest to claim damages is barred. Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50 (1964); Dowden v. Bankers Fire & Marine Insurance Company, 124 So.2d 254, 259, La.App., 2d Cir. 1960 (certiorari denied); Morgan v. Stubbs, 162 So.2d 388, La.App., 2d Cir. 1964 (writ refused).
Moreover, O’Dell, as the owner of the automobile, had the duty to control its operation. A failure in this duty is a factor which also convicts him of either independent or contributory negligence. For instance, it was stated in Buquet v. St. Amant, 55 So.2d 645, La.App., Orleans 1951 (writ denied),- that, while, under all circumstances, the owner of a vehicle who permits another to drive it cannot he held liable for the driver’s negligence, but where the parties are both interested in the enterprise, the owner, who has the right to control the operation of the motor vehicle, must *661 be, along with the driver, deemed guilty of negligence where the car is driven on the wrong side of the highway, resulting in a head-on collision with an automobile approaching from the opposite direction.
Third-party-defendants’ plea of contributory negligence was accordingly well-founded and properly sustained.
The judgment appealed is therefore affirmed.
Affirmed.