223 So.2d 453 (1969)
Louis BROWN, Plaintiff and Appellant,
v.
Clarence L. COLLINS et al., Defendants and Appellees.
No. 2698.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1969.
Rehearing Denied June 18, 1969.
*454 Neblett, Fuhrer & Hunter, by Walter M. Hunter, Jr., Alexandria, for plaintiff-appellant.
Guillory, Guillory & Guillory, by Robert K. Guillory, Eunice, for plaintiff-appellee.
Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a companion case to Bradley v. Collins, La.App., 223 So.2d 457 in which a separate judgment is being rendered by us this date. Both are suits for damages for personal injuries arising out of a single head-on collision between two automobiles. Plaintiffs were passengers in a vehicle driven by the defendant, Clarence L. Collins, and insured by the defendant, State Farm Mutual Automobile Insurance Company. The other vehicle was being driven by Elydrah Williams.
Williams and his passengers also filed suit against Collins and State Farm. The insurer concedes liability to the full extent of its coverage of $20,000. The actual contest is between the Williams group on one hand, and Brown and Bradley on the other, for the insurance benefits.
It is conceded by all parties that the accident was caused solely by the negligence of Collins in driving on the wrong side of the highway. The sole issue in the two present cases is whether Brown and Bradley, who were passengers in the Collins automobile, were contributorily negligent in riding with Collins when they knew he was under the influence of intoxicating beverages. From an adverse judgment, Brown and Bradley appealed.
The general facts are that on Sunday, June 11, 1967, at about 4:20 p. m., Collins was driving in a westerly direction on U.S. Highway 190, a two-lane, two-way highway between Elton and Kinder, Louisiana. He drove into his left lane, in an attempt to pass another vehicle, and ran head-on into the automobile driven by Williams, who was proceeding in his own proper lane in an easterly direction. One passenger in the Williams vehicle was killed and several seriously injured. Collins received a minor head injury and his two passengers were seriously injured.
The substantial issue is whether Collins was intoxicated. Collins himself testified as follows: He had done "considerable drinking" the Saturday night before the accident. He arose Sunday morning, ate no breakfast, and met the plaintiff, James Bradley, in Oakdale. He and Bradley and another man, not involved in this litigation, went to the "Hardwood", a club in Oakdale, where they each drank a quart (equivalent of two bottles) of beer between about 10:15 a. m. and 11:30 a. m. Collins and Bradley then went to Oberline, picked up the plaintiff, Louis Brown, and went to a tavern. While there, Collins drank *455 "three or four beers." They left Oberlin about 2:00 p. m. and went to Elton, to a cafe where a dance was in progress. While there, Collins drank "three or four beers" and he and the two plaintiffs and another man also shared two one-half pints of whisky, chasing the whisky with the beer. They left the cafe in Elton about 4:00 p. m. and the accident occurred shortly thereafter.
The evidence also shows that Collins is 5' 10½" tall and weighs 132 pounds. He admits that he had nothing to eat during all of this period of drinking.
Summarizing Collins's testimony, he drank at least eight beers and shared a pint of whisky with three other men between about 10:15 a. m. and 4:20 p. m., the time of the accident.
The plaintiff Brown was unable to testify because of his injuries. However, Bradley testified that he and Collins each had only one beer at Oberlin, at about 2:15 p. m., another beer at the dance at Elton, and that four of them shared one-half pint of whisky. He also says that when they left the dance they each took one beer to drink in the car. Bradley says Collins was not intoxicated.
Clarence Jones, another witness for the plaintiffs, testified he saw Collins and the two plaintiffs at the dance in Elton and all he saw them drink was the one-half pint of whisky. He testified Collins did not appear to be intoxicated.
L. J. Bertrand, the state trooper who investigated the accident, testified as to some of the details of the accident. He said Collins was in the wrong lane of traffic and left no skidmarks, which to him indicated that Collins did not apply his brakes. He did not see Collins except in the hospital in Jennings. He says he smelled liquor on his breath and ordered a blood test taken.
In addition, Elydrah Williams, driver of the other vehicle, and his brother, Billy Williams, who arrived at the scene shortly after the accident, testified that at the scene they saw Collins and were of the opinion that he was intoxicated. They said he smelled of intoxicating liquor, staggered when he walked, "babbled" when he talked and had to lean on the car to stand up. Of course, this testimony is weakened to some extent by the fact that Collins did have a laceration of his forehead, which could have caused his dazed condition.
During the trial the court permitted the Williams group to file in evidence, over plaintiffs' strenuous objection, certified copies of the records of two hospitals showing the percentage of alcohol found in the blood of Collins shortly after the accident.
The question is whether the medical records were admissible in evidence under LSA-R.S. 13:3714 which reads as follows:
"Whenever a certified copy of the chart or record of any hospital in this state, signed by the director, assistant director, superintendent or secretary-treasurer of the board of administrators of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination. As amended Acts 1952, No. 519, § 1; Acts 1966, No. 161, § 1."
The first record is from the American Legion Hospital in Jennings, Louisiana. It shows that at 6:00 p. m. on the date of the accident blood was drawn from Clarence Collins and released to J. B. Arrant, a state trooper, for delivery to the Lake Charles Memorial Hospital. This record is certified by Ruth Finch, R.N., administrator of the Jennings Hospital.
The next hospital record in question is from the Lake Charles Memorial Hospital. It is signed by A. L. Cook, M.D., shows he performed a test on the blood sample taken from Collins and the result was a determination of .255 mg. alcohol in the blood. *456 To this record is attached a letter signed by Verl Wood, executive director of the hospital, certifying the record.
Plaintiff objects to the admissibility of these hospital records, first on the grounds that they were not properly certified. Counsel does not give his reasons. On their face, we can see nothing wrong with the certifications.
The next objection is that the proper foundation was not presented for the introduction of the hospital records. The argument here is that no witnesses were called to show that the blood sample taken from Collins in Jennings was the same as that tested by the hospital in Lake Charles. Furthermore, no witnesses were presented to testify "in regard to the manner in which the blood test was conducted at the Lake Charles Hospital."
Such foundation witnesses were not required. The statute quoted above clearly states that a certified copy of the record of any hospital "shall be received in evidence by such court as prima facie proof of its contents,". No foundation is required for the admission of these certified records. See 26 T.L.R. 371 at 375. The very purpose of the statute is to eliminate the requirement, under prior rules of evidence, that everyone who wrote any part of the record or had anything to do with the specimens, laboratory tests, treatments, etc. shown in the records, must be produced as a witness in court to verify the record. These witnesses no longer need be produced. The rights of the party against whom the record is sought to be used are protected by the provisions of the statute that he may summon and examine those making the record as witnesses under cross-examination. We find no merit in the objection that the proper foundation for the introduction of the hospital records was not laid.
The next objection to the hospital records is that no expert medical opinion whatever was introduced at the trial to show the effect of .255 mg. percent of alcohol in the blood. The argument here is that this is a matter of scientific opinion of which the judge may not take judicial notice. We think this is correct.
Although there are a number of cases in our jurisprudence where the courts have taken judicial notice of the fact that consumption of alcoholic beverages dulls the perception and reflexes, Barnebey v. Northwestern Mutual Insurance Company, La.App., 186 So.2d 658; Bourg v. Aetna Casualty & Surety Company, La.App., 77 So.2d 131; Doyle v. Penton Lumber Company, La.App., 56 So.2d 774, there are no cases in which our courts have taken judicial notice of the percentage of alcohol in the blood stream necessary to produce intoxication. This is not a matter of such common knowledge that the court can take judicial cognizance thereof. It is a matter of expert medical opinion which must be proved.
The Williams group contends the court can consider a chart found in 6 Am. Jur., Proof of Facts, 495, showing the percent of alcohol in the blood necessary to produce various degrees of intoxication. The chart is not in evidence. In our view, it would not have been admissible as independent evidence if offered. Certainly, it cannot be considered by the judge. As a general rule, scientific treatises, books, charts, formulas and other expressions of expert opinion are objectionable as hearsay. They are extrajudicial and unsworn statements by persons not available in court for cross-examination. Guidry v. Grain Dealers Mutual Insurance Company, La.App., 193 So.2d 873 (3rd Cir. 1967).
Plaintiff also contends the judge can consider LSA-R.S. 32:662, creating presumptions of intoxication from blood alcohol tests. This statute expressly provides it has no application to a civil action.
It is our conclusion that the hospital records were admissible in evidence, but they have no evidentiary weight in this *457 case, because there was no expert medical opinion to interpret the contents of the records.
However, even without the blood alcohol test, there is ample evidence in the record to support the finding of fact by the trial judge that Collins was intoxicated. There is some conflict in the testimony as to the amount of intoxicating beverages Collins had consumed, but the preponderance shows he was under the influence. Collins admitted drinking eight beers and about one-fourth of a pint of whisky between approximately 10:00 a. m. and 4:00 p. m. on the day of the accident, this without eating anything. The facts of the accident itself corroborate a conclusion that Collins's senses were dulled. He attempted to pass another car, failed to see the approaching Williams automobile until it was only a few feet in front of him, did not even apply his brakes, and ran head-on into the Williams vehicle in his left-hand lane of traffic.
The applicable law is well established. It is not necessary to prove that the driver was intoxicated to a great degree. For the purposes of proving contributory negligence, it is sufficient to show that the driver had consumed a sufficient quantity of intoxicants to cause him to lose normal control of his mental and physical faculties. In addition, it must be shown that the plaintiffs knew or should have known the driver's condition and that the driver's intoxication was a cause in fact of the accident. See Daigle v. United States Fidelity & Guaranty Company, La.App., 187 So.2d 214 (3rd cir. 1966) and the authorities cited therein.
Under these authorities, we think the evidence is clearly sufficient, without the blood test, to show that Collins had consumed a sufficient amount of alcoholic beverages that his normal mental and physical faculities were impaired. This was known to the plaintiffs who had been with Collins for three or four hours preceding that accident. There is no question that Collins's intoxication was a cause in fact of the accident.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
MILLER, J. recused.