DIXON, Judge.
The plaintiff appeals from an adverse judgment in her workman’s compensation case.
Plaintiff had been employed for about five years by Remington Rand at its ammunition plant near Minden. On November 22, 1967, shortly after beginning her work, plaintiff experienced pain which sent her to the first aid room. Plaintiff’s duties consisted of handling parts for an assembly line; she was required to lift containers of small parts which weighed from a few pounds up to forty-one pounds each.
Plaintiff was five feet five inches tall, and weighed one hundred ninety-three pounds on the occasion of her preemployment examination in 1963. On the date of the injury, November 22, 1967, the plaintiff complained of hurting all over, particularly in her stomach. She thought she might have suffered a heart attack. She was given medicine for indigestion. She returned to work, and, she testified, with the assistance of her fellow workers, completed the day.
The next day was Thanksgiving, and the plaintiff’s shift did not return to work until the following Monday.- The plaintiff resumed her employment, but became unable to work by Thursday, when she reported to the company doctor. He did not examine her for a hernia, nor did the plaintiff relate to him symptoms which might lead him to believe she suffered from a hernia.
The plaintiff was sent home until she recovered from her malaise. (The company doctor testified concerning her audible wheezing, emphysema, arthritis, edema of the legs, and varicose veins). The plaintiff then continued her search for medical help. She visited a physician in Minden on the next two days, attempted to enter Charity Hospital (but was refused admission because of her employment), and then visited Dr. Fred Marx in Monroe on December 7, 1967. Apparently for the first time since November 22, 1967, a doctor actually gave the plaintiff a physical examination. He discovered a hernia in an old lower abdominal scar at about the midline. The plaintiff was hospitalized and this post-operative ventral hernia was surgically repaired on December 11, 1967. By January 23, 1968, Dr. Marx reported that plaintiff was able to return to work, but should be prevented from doing any “heavy lifting” until after three months from the date of the surgery.
However, when the plaintiff attempted to return to work on January 26, 1968, the company physician recommended that her employment be terminated because of her physical condition.
Prior to the trial of the case, the plaintiff was sent to Dr. Garrett in Bastrop. He examined her on May 27, 1968 and discovered an additional hernia at the site of the previous hernia repair. Dr. Garrett referred to this as a recurrent hernia, and classified it as disabling, recommending surgical repair with the use of dacron mesh to reinforce the hernia repair. There is no evidence in the record concerning any trauma or strain intervening between this examination and the surgical repair performed by Dr. Marx in December of 1967.
The district judge concluded that plaintiff failed to prove that she sustained a hernia as the result of an accident while engaged in the course of her employment.
The facts in this case are hardly disputed. The conclusions to be drawn from the facts are in dispute.
The plaintiff testified, Transcript, page 47:
“Q What happened on November 22, 1967?
“A Well, when I went in that morning I had to supply the line and I had new parts in there and I had to lift them off the skidds and put them on the other. And I just started to hurting all over. In the pit of my stomach more so than any place. *628 And I went to first aid. I thought maybe I was having a heart attack or acute indigestion, I didn’t know, and I went to first aid and the nurse gave me a something or other for acute indigestion I don’t know what it was, but it didn’t help any. I went back on the line, though and worked for the rest of the day.
“Q Were you able to work the rest of the day ?
“A I did work, but I didn’t feel like it. But I did cause I’m a widow woman, I have to work.
“Q Did you complain to any of your fellow workers ?
“A I sure did.
“Q Did you complain to your employer ?
“A I sure did. I had to get a pass from him to go to first aid.
“Q What did they do for you at first aid?
“A They gave me some kind of liquid white medicine, I don’t know what it was.
“Q Did they tell you what was wrong with you?
“A No sir.
“Q Did they examine you ?
“A No sir.”
The following week, when the plaintiff went to the company doctor and complained of “hurting all over,” he gave her a cardiogram and sent her home until she recovered from whatever it was that was causing her pain.
There is no question about the fact that the plaintiff did become ill and did go to the first aid nurse on November 22, 1967. Two of her fellow workers who were aware of her complaints testified at the trial. The medical records tend to corroborate the plaintiff’s testimony. Upon the plaintiff’s complaint of pain in the stomach, she was given medicine for indigestion instead of a physical examination. (The employer’s medical records showed that plaintiff had been treated for indigestion on occasion pri- or to November 22, 1967). The evidence is convincing that the plaintiff did on November 22, 1967 suffer, while performing her regular duties and lifting boxes of parts, the hernia which was subsequently repaired.
The plaintiff offered in evidence a certified copy of the St. Francis Hospital records, including Dr. Marx’ report. The defendant objected to the admissibility of these records, claiming they were ex parte and hearsay. The report was admitted in evidence subject to defendant’s objection. Defendant reurged the objection on appeal.
LSA-R.S. 13:3714 reads as follows:
“Whenever a certified copy of the chart or record of any hospital in this state, signed by the director, assistant director, superintendent or secretary-treasurer of the board of administrators of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination. As amended Acts 1952, No. 519, § 1; Acts 1966, No. 161, § 1.”
This statute was interpreted by Judge Culpepper in the case of Brown v. Collins, La.App., 223 So.2d 453, 456, where he stated :
“The very purpose of the statute (R.S. 13:3714) is to eliminate the requirement, under prior rules of evidence, that everyone who wrote any part of the record or had anything to do with the specimens, laboratory tests, treatments, etc. shown in the records, must be produced as a witness in court to verify the record. *629 These witnesses no longer need be produced. The rights of the party against whom the record is sought to be used are protected by the provisions of the statute that he may summon and examine those making the record as witnesses under cross-examination.”
The hospital records were properly admitted in evidence. There is no contention that the material contained in the hospital records surprised the defendant. In fact, the defendant possessed, prior to the trial, a copy of the report made by the operating physician. No effort was made by the defendant to summon and cross-examine any witness relating to the hospital record. Nor was the physician’s report in the hospital record the only medical evidence produced by the plaintiff.
The district judge found that plaintiff’s “testimony describes no specific episode or event which might be ascribed as an accident within the definition of the Workmen’s Compensation Law, nor does her testimony reveal that at any time she suffered the symptoms which usually accompany the development of a hernia such as a burning sensation or nausea.”
These conclusions, we believe, are in error, and the judgment of the district court is reversed.
We do not find, however, that defendant’s failure to pay compensation was arbitrary and capricious.
There is now judgment in favor of plaintiff, Mrs. Lela Mae Massingill, and against defendant, The Travelers Insurance Company, for compensation at the rate of $35.00 a week for four hundred (400) week» commencing November 22, 1967, with legal interest on each weekly installment from the date due until paid; the demands of the plaintiff for penalties and attorney’s fees are rejected. The defendant is cast for all costs.