KNOLL, Judge.
This appeal concerns whether the trial court erred in disallowing the worker’s compensation claim of William M. Gore because of employee intoxication. Gore argues on appeal that: (1) the trial court erred in finding that the city of Pineville, his employer, proved that he was intoxicated at the time of his work accident, and that his intoxication caused his injuries; (2) Pineville failed to lay a foundation for the admission of the blood test results; and, (3) before the trial court should have considered the blood alcohol test results, it was incumbent upon Pineville to prove beyond a reasonable doubt that the blood testing protocol established in State v. Rowell, 517 So.2d 799 (La.1988), was met. We affirm.
FACTS
Gore, a truck driver and heavy equipment operator for Pineville, was hauling sand on October 17, 1988, from the McVay Gravel Pit to the Pineville City Yard. At approximately 1 p.m. he ran off the road, and turned his truck over. Gore’s truck immediately caught fire, causing him to suffer burns to the upper part of his body. A co-employee who passed by shortly after the accident freed Gore from the burning vehicle.
Gore was transported by ambulance to Rapides General Hospital where he was initially admitted and various blood tests, including a blood alcohol test, were performed in order to determine the course of his medical treatment. After a few days at Rapides General, Gore was then transferred to the burn unit at Baton Rouge General Hospital where he received burn treatment for approximately two months.
Pineville refused to pay Gore’s medical expenses and denied his worker’s compensation benefits, contending under LSA-R.S. 23:1081 that Gore was not qualified for such benefits because his voluntary intoxication caused his injuries.
INTOXICATION
Gore contends on appeal that the record is void of testimony that he drank alcoholic beverages on the day of the accident or that his actions indicated that he was intoxicated. Furthermore, Gore argues that the trial court improperly considered evidence that at the time of his admission to Rapides General Hospital his blood alcohol level was 0.276 percent.
An employer in a worker’s compensation action who pleads the defense of intoxication, must prove by a preponderance of the evidence, that the employee’s intoxication was a substantial-cause of the accident. Thus, the employer must prove that the employee was intoxicated at the time of the accident, and that the employee’s intoxication caused the accident. LSA-R.S. 23:1081; Folse v. American Well Control, *1124 536 So.2d 686 (La.App. 3rd Cir.1988), writ denied, 538 So.2d 592 (La.1989).
Regarding the issue of causation, the jurisprudence uniformly holds that the employer must prove by some competent evidence other than the mere fact of intoxication that the accident was caused by the employee’s intoxication. Ray v. Superior Iron Works and Supply Co., Inc., 284 So.2d 140 (La.App. 3rd Cir.1973), writ denied, 286 So.2d 365 (La.1973). In order to prove causation, the courts have generally looked for evidence other than the mere happening of the accident, such as behavior that would clearly demonstrate the employee’s intoxication and resulting impairment or loss of control. At the very least, the jurisprudence requires a showing that the accident was one that would not ordinarily happen absent intoxication. Folse, supra, and cases cited therein.
Initially, Gore argues that the evidence of his blood alcohol level on the day of the accident was improperly considered because of Pineville’s failure to lay a proper foundation for the admission of the blood test results.
We find that under the provisions of LSA-R.S. 13:3714 the blood test results were properly admitted without laying a foundation. R.S. 13:3714 states:
“Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.”
In Brown v. Collins, 223 So.2d 453 (La.App. 3rd Cir.1969), we affirmed the admission of blood test results pursuant to the hospital exception to the hearsay rule recognized in LSA-R.S. 13:3714 for certified medical records. In Brown we stated at page 456:
“The next objection is that the proper foundation was not presented for the introduction of the hospital records. The argument here is that no witnesses were called to show that the blood sample taken from Collins in Jennings was the same as that tested by the hospital in Lake Charles. Furthermore, no witnesses were presented to testify ‘in regard to the manner in which the blood test was conducted at the Lake Charles Hospital.’ Such foundation witnesses were not required. The statute quoted above clearly states that a certified copy of the record of any hospital ‘shall be received in evidence by such court as prima facie proof of its contents,’. No foundation is required for the admission of these certified records ... The very purpose of the statute is to eliminate the requirement, under prior rules of evidence, that everyone who wrote any part of the record or had anything to do with the specimens, laboratory tests, treatments, etc. shown in the records, must be produced as a witness in court to verify the record. These witnesses no longer need be produced. The rights of the party against whom the record is sought to be used are protected by the provisions of the statute that he may summon and examine those making the record as witnesses under cross-examination. ’ ’
We find the same results mandated herein. Pineville offered the certified copy of the medical records of Rapides General, and under the clear provisions of LSA-R.S. 13:3714, the blood alcohol test results included therein were admissible into evidence without laying a foundation for their admission.
Further arguing, Gore contends that State v. Rowell, 517 So.2d 799 (La.1988), extends to civil proceedings, and requires proof of blood testing protocol to the criminal standard of proof beyond a reasonable doubt. We disagree.
It has long been established that although the presumption of intoxication provided by LSA-R.S. 32:662 is not applicable to civil proceedings, a civil litigant may still introduce into evidence a person’s blood *1125 alcohol content and expert testimony to interpret the effect of such a level on a person’s ability to operate a motor vehicle. Lee v. Missouri Pacific R. Co., 566 So.2d 1052 (La.App. 2nd Cir.1990), writ denied, 569 So.2d 986 (La.1990), and cases cited therein.
Since Rowell, the Louisiana Supreme Court has stated that Rowell’s holding is limited to situations where the State relies upon the statutory presumption of intoxication provided by LSA-R.S. 32:662. State v. Honeyman, 560 So.2d 825 (La.1990). Accordingly, since the presumption of intoxication is not applicable to civil proceedings, we find that Rowell does not control, and proof of the blood testing protocol beyond a reasonable doubt is not required. Therefore we find no merit to Gore’s contention that the blood alcohol test in the present case should not have been admitted into evidence because the stringent foundational requisites of Rowell were not met.
As additional support of his position, Gore urges that the Louisiana Supreme Court’s decision in Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), extends Rowell’s standards to civil proceedings.
The Socorro case was civil litigation in which the blood alcohol test results of the plaintiff were offered into evidence to show victim fault. In Socorro, the Supreme Court, stated at page 945:
“The lower courts gave no weight to that evidence [i.e., evidence of Socorro’s blood alcohol level] based on State v. Rowell, 517 So.2d 799 (La.1988), in which we gave directives for the proper foundation and predicate that must be established to ensure the integrity and reliability of blood alcohol tests. After a review of the record, we agree that the defendants failed to lay a proper foundation. We affirm the court of appeal’s finding on this issue for the reasons more fully stated in their opinion.”
The appellate court’s decision in Socorro v. Orleans Levee Board, 561 So.2d 739 (La.App. 4th Cir.1990), at page 757 stated:
“Rowell requires that, before evidence of a given blood alcohol level will be admitted into evidence, the proper foundation and predicate must be laid to insure the integrity and reliability of the blood alcohol tests. This foundation must show that proper procedures were used for repair, maintenance, inspection, cleaning, calibration, certification and chemical accuracy. In the instant case, the trial court found that defendants failed to meet this requirement and disregarded the evidence.
We agree that the proof offered as to the accuracy of the tests was inadequate. The only witness called by defendants to testify as to the procedures used in taking the blood sample was Gloria Prunty, medical technician at Ochsner. Her testimony was vague, insubstantial and based on hearsay. Prunty was unable to confirm Ochsner’s standard calibration procedure on the instrument used to analyze Socorro’s blood sample, whether the manufacturer’s standard calibration procedure was followed when the instrument was last calibrated or whether the results obtained at the last calibration matched the manufacturer’s standards.”
After thoroughly reviewing the Socorro holding, if it was intended to extend Ro-well’s holding to civil litigation, we cannot reconcile it with prior jurisprudence which limited Rowell to those instances in which the legal presumption of intoxication is invoked. Nevertheless, we find Socorro’s holding limited to the facts presented therein, i.e., attempted introduction of blood alcohol test results without testimony of the calibration of the testing machine, and without expert testimony as to the effects of Socorro’s blood alcohol level on his judgment or physical coordination.
Under this limited holding in Socorro, we find the case before us clearly distinguishable. In the case sub judice, Pineville presented, as detailed infra, testimony of the technician responsible for the calibration and maintenance of the testing machine involved. Additionally, Pineville introduced expert testimony of the effect of Gore’s blood alcohol level on his ability to control a motor vehicle. In further distinguishing the present case, we likewise note *1126 that nowhere in Socorro did our brethren of the Fourth Circuit or the Supreme Court address the applicability of LSA-R.S. 13:3714 to the admissibility of the blood alcohol test results.
Gore next contends that the trial court should not have given as much weight to the blood alcohol test results because of Pineville’s failure to show a complete chain of custody for the blood sample, i.e., no testimony of who drew the blood or who tested it.
Michael Matthews, Rapides General’s Laboratory Data Center Manager, testified about his responsibilities for the maintenance and upkeep of the laboratory’s computer system. He testified that the lab ran a blood alcohol control through the Automated Chemical Analyzer on October 17, 18, and 21, 1988, in which a known solution of alcohol was run through the testing system to verify that the machine reports results within an acceptable range. The results conformed with the known solution tested. Accordingly, it is clear that on the same day as Gore’s accident the testing equipment was verified as to its accuracy.
Mary Burlew, a medical technologist in Rapides General’s chemistry department, testified that although she did not specifically recall Gore, she remembered being present in the emergency room on the date of Gore’s accident, a year and one half prior to trial, when blood was drawn from a patient who had received serious burns in the areas of his face and arms. She testified that she could not remember whether she or the doctor drew Gore’s blood. She further stated that the standard operating procedure called for the labeling of the blood sample before leaving the emergency room, and that she would have turned the sample over to lab personnel within five minutes after drawing the blood. She then testified about the procedure for testing the blood sample in the Automated Chemical Analyzer and reporting the results to the emergency room. In all, it was her estimation that only thirty minutes would elapse between the time the blood sample was drawn and when the test results would be reported to the emergency room. She likewise testified that the laboratory is restricted to authorized lab personnel, and that at no time during the testing could someone other than lab personnel have access to the sample.
Bridget Havard, a Rapides General medical technologist, testified that she entered the results of Gore’s blood alcohol test into the computer and called the emergency room to confirm the results of the test since it was positive for intoxication. She likewise provided the trial court with detailed testimony on the standard operating procedure for entering the blood test results into the computer.
Accordingly, based on the medical evidence presented, we find that even considering the lack of identification of who actually drew and tested Gore’s blood, the trial court was not manifestly erroneous in utilizing the blood alcohol test results in its determination of intoxication. Either the medical technician or the doctor drew the blood. Moreover, the testing procedure in use was elaborated upon and the automated testing of the blood sample was clearly explained. Considering the restricted admittance to the laboratory, the chance of tampering was further minimized so as not to cast doubt on the test results. Furthermore, we find that the reliability of the test results was proven by the fact that other tests were performed on Gore’s blood and those results, reported at the same time as the blood alcohol test, were utilized by the emergency room physicians for the proper care and proper treatment of Gore.
Pineville then introduced the deposition of Dr. William J. George, a professor of pharmacology and the director of toxicology at Tulane University. Dr. George thoroughly discussed the correlation between blood alcohol test results and a person’s ability to control a motor vehicle. After considering the medical evidence in the case sub judice, Dr. George concluded that if Gore’s blood alcohol level was 0.276, he would be highly impaired in operating a vehicle.
Lastly, Gore contends that even considering the blood alcohol test results, Pine-ville did not prove by a preponderance of *1127 the evidence that he was intoxicated. He relies on his testimony that he had not consumed alcoholic beverages on the day of the accident and that he was run off the road by an unknown vehicle. He further emphasizes that there was no testimony from the person who pulled him from his burning truck, the ambulance workers, the emergency room staff (as noted in the hospital records), or the state trooper that there was the smell of alcohol on his breath. Considering the high blood alcohol level reported on the blood alcohol test, Gore argues that if he was as intoxicated as the blood alcohol test indicated, his intoxication should have been readily noticeable.
Gore testified that he had not consumed alcoholic beverages on the day of the accident. We have carefully reviewed the record, and it shows that Pineville was unable to provide direct evidence that Gore drank alcoholic beverages on the day of the accident. Nevertheless, we hasten to add that Pineville’s inability to introduce direct evidence of Gore's consumption of alcoholic beverages was not fatal to its defense of employee intoxication. The record is replete with convincing circumstantial evidence of Gore’s consumption of alcoholic beverages on the date of the work accident.
Gore’s other testimony was that his injuries occurred when he was run off the road by an unknown vehicle! The only evidence in support of Gore’s nebulous contention is the stipulated testimony of Jimmy Tris-chler, the person who rescued Gore from the burning vehicle. Trischler’s testimony was that Gore told him as he was rescued that an unidentified vehicle forced him off the road. On the other hand, the trial court heard the testimony of Trooper McKey who stated that his investigation turned up no evidence that another vehicle ran Gore off the road or that the road condition caused the accident. To the contrary, Trooper McKey testified that he found yaw marks on the roadway where Gore overturned his truck. He testified that the yaw marks evidenced that Gore lost control of his vehicle.
We have also considered Gore’s contention that there was a lack of testimony that alcohol could be smelled on his breath. Trischler, as pointed out hereinabove, did not testify and contributed information solely through stipulation about what caused Gore to leave the roadway; accordingly, Trischler was never queried about the smell of alcohol on Gore’s breath. Likewise, Trooper McKey, who only briefly saw Gore in the emergency room, testified that he never got close enough to him to detect the smell of alcohol. The only other evidence referred to by Gore is that of the ambulance drivers who stated that they did not detect the smell of alcohol on Gore’s breath, and that he was oriented as to person, place and time.
On the other hand, the trial court heard the testimony of two physicians who treated Gore in the emergency room on the day of the accident. Dr. Tom Reedy and Dr. John McCabe testified that they smelled alcohol on Gore’s breath. Dr. McCabe further testified that Gore was disoriented and belligerent, and despite his severe burns, Gore did not want to be hospitalized.
When the trial court is presented with contradictory evidence, it is axiomatic that a reviewing court will not disturb the trial court’s evaluations and credibility determinations. The evidence surrounding the question of whether alcohol could be smelled on Gore’s breathe is such a factual determination. After reviewing the record, we cannot say that the trial court was clearly wrong in attributing more weight to the testimony of the treating physicians. These medical professionals worked closest to Gore in the hospital, and had the best opportunity to observe him on the date of the accident.
The medical testimony further provided the trial court with evidence that Gore suffered from chronic alcoholism. Dr. Reedy and Dr. McCabe testified that Gore’s liver was enlarged. Dr. Reedy opined that Gore had chronic liver disease and that probably his liver condition was the result of his excessive use of alcohol. In this same vein, although Mrs. Gore did not testify at trial, Trooper McKey and Dr. McCabe stated *1128 that she told them that Gore drank heavily day-to-day, and that he had consumed a fifth of whiskey the night before the accident. Furthermore, on December 2, 1988, the records of Baton Rouge General reflect that Gore, after spending almost two months in the hospital, stated “adamant[ly] that he learned his lesson.”
After carefully reviewing the evidence, we find that the trial court’s conclusion of employee intoxication was not manifestly erroneous and was well supported by the record. It is clear that the trial court based its determination of Gore’s intoxication on evidence of the treating physicians in the emergency room, medical evidence of Gore’s chronic alcoholism, physical evidence at the accident scene, as well as the blood alcohol test results. Considering the totality of evidence presented, we find that Pineville proved by a preponderance of the evidence that Gore was intoxicated at the time of his accident, and that the intoxication caused his injuries.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Gore.
AFFIRMED.